## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

DEBBIE ALONSO RODRÍGUEZ,
in her capacity as Executor of the Estate of
IRIS MARÍA RODRÍGUEZ ROSA,
and ADCOM GROUP, INC.,

*Plaintiffs*,

v.

EDWIN ALONSO RODRÍGUEZ,
in his capacity as Executor of the Estate of
SANTOS ALONSO MALDONADO,
SUPERMERCADO MR. SPECIAL, INC,
SA INVESTMENTS, LLC,
JORGE L. FUENTES BENEJAM, and
MAYAGUEZ TOURIST DEVELOPMENT, INC.,

*Defendants*,

SANTOS ALONSO CINTRÓN,
RICARDO ALONSO TORRES,
CARLOS ALONSO TORRES,
CRISTINE ALONSO TORRES,
GERALDINE ALONSO TORRES,
ZULMA A. TORRES RODRÍGUEZ,
CATHERINE J. ALONSO APONTE,
EDWIN S. ALONSO APONTE,
ANDRÉS O. PANNOCCHIA ALONSO,
STEPHANIE VILELLA ALONSO and
VALENTÍN ALONSO MALDONADO,

*Nominal Defendants*.

Case No. _____

**JURY TRIAL DEMANDED**

## **COMPLAINT**

COME NOW Debbie Alonso Rodríguez ("Debbie"), in her capacity as Executor of the Estate of Iris M. Rodríguez Rosa, and ADCOM Group, Inc. ("ADCOM" and together with Debbie, "Plaintiffs"), through undesigned counsel, and hereby STATE, ALLEGE, and PRAY as follows:

## INTRODUCTION

1.      This action arises from a systematic scheme of fraudulent conduct orchestrated by Defendant Edwin Alonso Rodríguez ("Edwin"), who conspired to misappropriate and divert assets belonging to Supermercado Mr. Special, Inc. ("Mr. Special") and the estates of Santos Alonso Maldonado ("Don Santos") and Iris M. Rodríguez Rosa ("Doña Iris"), in violation of the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. §§ 1961-68, federal copyright laws, and Puerto Rico law.

2.      Don Santos and Doña Iris built Mr. Special into a successful supermarket chain and amassed significant business holdings during their 67-year marriage. Following their deaths in January 2023, Edwin unlawfully seized control of Mr. Special and other family businesses, despite owning only a fractional interest as one of multiple heirs. Edwin has systematically abused his position as executor of Don Santos's estate while disregarding Debbie's role as the executor of Doña Iris's estate, which holds an equal interest in the family businesses under Puerto Rico's community property regime.

3.      For approximately 33 years, Debbie was Vice President of Sales and Marketing for Mr. Special, executing the company's marketing strategy. In 1992, in his capacity as President of Mr. Special and as a deliberate business decision to establish a long-term contractual relationship between the entities, Don Santos directed Debbie to establish ADCOM to provide advertising and marketing services to Mr. Special. This business arrangement, contractually binding both entities, was formalized in 1993 and continued successfully for 30 years until Edwin unilaterally terminated

both Debbie's employment and ADCOM's service contract in January of 2025, despite an express understanding that the relationship would continue throughout Debbie's lifetime.

4.    Edwin has carried out a series of activities constituting a pattern of racketeering that began shortly before his parents' deaths and accelerated afterward. These activities include: (a) transferring over $71 million in assets from Mr. Special to SA Investments, LLC ("SAI-LLC"), an entity created in August 2021 and controlled exclusively by Edwin; (b) engaging in extremely high-risk securities transactions resulting in substantial losses; (c) diverting corporate funds for personal benefit; (d) unlawfully terminating Debbie's employment and ADCOM's longstanding commercial relationship with Mr. Special to eliminate oversight and conceal his fraudulent activities; (e) executing fraudulent real estate transfers worth millions of dollars without proper legal authority, required tax clearances, or consent from rightful heirs; and (f) concealing financial information and denying access to corporate books and records, all while using interstate wire and mail communications to execute his scheme.

5.    Edwin's fraudulent scheme continued in July 2025 when he incorporated Mayagüez Tourist Development, Inc. ("MTD-INC") as a vehicle to receive valuable real estate belonging to the estates. Through this sham corporation, Edwin illegally transferred property worth millions of dollars from the dissolved special partnership Mayagüez Tourist Development, S.E., evading legal requirements including tax clearances, heir consent, and proper estate administration procedures. This transfer represents a theft of estate assets accomplished through the creation and use of a corporate entity designed to exclude rightful heirs from their community property interests.

6.    Edwin's actions have violated federal and Puerto Rico law, causing substantial financial injury to Debbie, to ADCOM, to the estates of both Don Santos and Doña Iris, and to Mr. Special itself, while enriching himself and SAI-LLC. Plaintiffs seek remedies including damages

under RICO and the Puerto Rico Organized Crime Act, copyright infringement damages, damages for breaches of fiduciary duty, contract damages, and declaratory relief regarding corporate governance to prevent further harm to the Alonso-Rodríguez Family Businesses.

**THE PARTIES**

*Plaintiffs*

7.    Debbie Alonso Rodríguez is a natural person residing in San Juan, Puerto Rico. She is the daughter of Don Santos and Doña Iris and serves as the duly appointed executor of the Estate of Iris M. Rodríguez Rosa pursuant to Doña Iris's Last Will and Testament dated June 17, 2010. Debbie's appointment was confirmed by a Letter of Testamentary issued by the Puerto Rico Court of First Instance on May 1, 2023, in Case No. CB2023CV00232.

8.    ADCOM Group, Inc. is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico with its principal place of business in Guaynabo, Puerto Rico. ADCOM is an advertising and public relations agency founded and owned by Debbie that provided marketing and advertising services to Mr. Special from 1993 until its wrongful termination in 2025. See Gener-Villar v. ADCOM Group, Inc., 509 F. Supp. 2d 117, 121 (D.P.R. 2007).

*Defendants*

9.    Edwin Alonso Rodríguez is a natural person residing in Mayagüez, Puerto Rico. He is the son of Don Santos and Doña Iris, and Debbie's brother. Edwin serves as the duly appointed executor of the Estate of Santos Alonso Maldonado pursuant to Don Santo's Last Will and Testament dated August 21, 2021, as confirmed by a Letter of Testamentary issued by the Puerto Rico Court of First Instance on April 18, 2023, in Case No. MZ2021CV00594.

10.    Supermercado Mr. Special, Inc., formerly Mr. Special Supermarkets, Inc., is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico with its

principal place of business in Mayagüez, Puerto Rico. The company was originally incorporated on July 1, 1971, and operates a supermarket chain across Puerto Rico. Mr. Special was founded by Don Santos and Doña Iris during their marriage under Puerto Rico's community property laws. Under this legal regime, they jointly owned the totality of Mr. Special's shares as marital property, regardless of whose name appeared on the stock certificates.

11.     SA Investments, LLC is a limited liability company organized and existing under the laws of the Commonwealth of Puerto Rico on August 9, 2021, with an effective date of October 1, 2021. Although SAI-LLC was ostensibly created for the benefit of Don Santos and Doña Iris, the entity was structured to give Edwin exclusive control. Following the deaths of Don Santos and Doña Iris in January 2023, Edwin has maintained exclusive control over SAI-LLC and its assets without recognizing that the unliquidated post-marital community of Don Santos and Doña Iris jointly owns the totality of membership interests in SAI-LLC.

12.     Jorge L. Fuentes Benejam ("Fuentes") is a natural person residing in Puerto Rico. Upon information and belief, Fuentes was appointed to the Board of Directors of Mr. Special on or about June 13, 2025, through invalid corporate action taken without proper authorization.

13.     Mayagüez Tourist Development, Inc. ("MTD-INC") is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico, incorporated on June 13, 2025, under Department of State Registration No. 555966, with its principal place of business in Mayagüez, Puerto Rico. This entity was created by Edwin as an instrumentality of his fraudulent scheme to receive, conceal, and exercise unauthorized control over valuable real estate belonging to the estates of Don Santos and Doña Iris. The corporation was established specifically to circumvent proper estate administration procedures and to vest Edwin with exclusive ownership

and control over estate property while denying the rightful heirs their community property interests and inheritance rights.

***Nominal Defendants[1]***

14.     Santos Alonso Cintrón is a natural person residing in Cabo Rojo, Puerto Rico. He is an heir of the Estate of Santos Alonso Maldonado and holds interests in the Alonso-Rodríguez Family Businesses as part of the unliquidated post-marital community between Don Santos and Doña Iris, which must be liquidated pursuant to Puerto Rico's community property regime.

15.     Ricardo Alonso Torres is a natural person residing in Mayagüez, Puerto Rico. He is an heir of both the Estate of Iris María Rodríguez Rosa and the Estate of Santos Alonso Maldonado, by right of representation in substitution of his deceased father, Richard Alonso Rodríguez, who died after the opening of both estate proceedings but before the completion of the liquidation of the post-marital community between Don Santos and Doña Iris.

16.     Carlos Alonso Torres is a natural person residing in Mayagüez, Puerto Rico. He is an heir of both the Estate of Iris María Rodríguez Rosa and the Estate of Santos Alonso Maldonado, by right of representation in substitution of his deceased father, Richard Alonso Rodríguez, who died after the opening of both estate proceedings but before the completion of the liquidation of the post-marital community between Don Santos and Doña Iris.

---

[1] The individuals listed as Nominal Defendants are included in this action solely because they are heirs and/or legatees of the Estates of Santos Alonso Maldonado and/or Iris María Rodríguez Rosa and, therefore, hold interests in the Alonso-Rodríguez Family Businesses and estate assets that are the subject of this litigation. These parties are joined as indispensable parties under Federal Rule of Civil Procedure 19 to ensure that complete relief can be accorded among existing parties and to avoid the risk of inconsistent judgments that could impair their ability to protect their interests in the unliquidated post-marital community. Plaintiffs seek no affirmative relief against these Nominal Defendants and acknowledge their status as interested parties whose rights may be affected by the resolution of this dispute.

17.     Cristine Alonso Torres is a natural person residing in Mayagüez, Puerto Rico. She is an heir of both the Estate of Iris María Rodríguez Rosa and the Estate of Santos Alonso Maldonado, by right of representation in substitution of her deceased father, Richard Alonso Rodríguez, who died after the opening of both estate proceedings but before the completion of the liquidation of the post-marital community between Don Santos and Doña Iris.

18.     Geraldine Alonso Torres is a natural person residing in Cabo Rojo, Puerto Rico. She is an heir of both the Estate of Iris María Rodríguez Rosa and the Estate of Santos Alonso Maldonado, by right of representation in substitution of her deceased father, Richard Alonso Rodríguez, who died after the opening of both estate proceedings but before the completion of the liquidation of the post-marital community between Don Santos and Doña Iris.

19.     Zulma A. Torres Rodríguez is a natural person residing in Mayagüez, Puerto Rico. She is the surviving spouse of Richard Alonso Rodríguez and holds inheritance rights in both the Estate of Santos Alonso Maldonado and the Estate of Iris María Rodríguez Rosa pursuant to the Puerto Rico Civil Code.

20.     Catherine J. Alonso Aponte is a natural person residing in Midland, Georgia. She is Doña Iris's granddaughter and was instituted as a legatee in Doña Iris's Last Will and Testament, thereby holding interests in the proper administration of the Alonso-Rodríguez Family Businesses.

21.     Edwin S. Alonso Aponte is a natural person residing in Chicago, Illinois. He is Doña Iris's grandson and was instituted as a legatee in Doña Iris's Last Will and Testament, thereby holding interests in the proper administration of the Alonso-Rodríguez Family Businesses.

22.     Andrés Orlando Pannocchia Alonso is a natural person residing in Clifton, Virginia. He is an heir of both the Estate of Santos Alonso Maldonado and the Estate of Iris María Rodríguez Rosa, by right of representation in substitution of his deceased mother, Iris V. Alonso Rodríguez,

who predeceased both Don Santos and Doña Iris. Additionally, he was instituted as a legatee in Doña Iris's Last Will and Testament as her grandson.

23.    Stephanie Vilella Alonso is a natural person residing in San Juan, Puerto Rico. She was instituted as a legatee in Doña Iris's Last Will and Testament as her granddaughter and holds interests in the proper administration of the Alonso-Rodríguez Family Businesses as part of the unliquidated post-marital community.

24.    Valentín Alonso Maldonado is a natural person residing in Sábana Grande, Puerto Rico. He was designated as a legatee in Don Santos's Last Will and Testament dated August 12, 2021, receiving a legacy in the amount of $500,000.00.

### JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction), as this case arises under the laws of the United States. Both Debbie and ADCOM assert claims under 18 U.S.C. § 1964(c), which provides a private right of action for violations of the federal RICO statute, 18 U.S.C. § 1962.

26.    This Court has additional subject matter jurisdiction over ADCOM's copyright infringement claims under 28 U.S.C. § 1338(a), which provides exclusive federal jurisdiction over claims arising under the federal copyright laws. ADCOM asserts claims under 17 U.S.C. § 501 for infringement of registered copyrights, providing this Court with both federal-question jurisdiction under 28 U.S.C. § 1331 and exclusive copyright jurisdiction under 28 U.S.C. § 1338(a).

27.    This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a), as these claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution. The

state and federal claims derive from a common nucleus of operative facts concerning Edwin's pattern of conduct in relation to the Alonso-Rodríguez Family Businesses.

28.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because all Defendants reside within the District of Puerto Rico and all the events and omissions giving rise to the claims occurred within this District. All the corporate entities maintain their principal places of business within this District, and the challenged corporate governance actions and fraudulent property transfers all took place within Puerto Rico.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A. THE FAMILY BUSINESS EMPIRE AND ESTATE PLANNING

29.     During their 67-year marriage, Don Santos and Doña Iris established a prominent business conglomerate in Puerto Rico. This conglomerate comprised multiple entities, including Supermercado Mr. Special, Inc., S.A. Properties, Inc., Mariola, Inc., Mayagüez Resort & Casino, Inc., Mayagüez Tourist Development, S.E., and SA Investments, LLC (collectively, the "Alonso-Rodríguez Family Businesses").

30.     Don Santos and Doña Iris were married on November 19, 1956, and remained so until their deaths in January 2023. Their marriage was subject to Puerto Rico's community property regime ("*sociedad legal de gananciales*"), under which all assets acquired during the marriage – including the entirety of their business holdings – were owned jointly by both spouses regardless of which spouse's name appeared on formal documentation.

31.     The spouses recognized their joint ownership of these business interests on July 15, 2015, when they executed five separate Trust Formation Deeds before Notary Wilfredo A. Míguez. Through these instruments, Don Santos and Doña Iris explicitly acknowledged, under oath, their

status as sole shareholders of the Alonso-Rodríguez Family Businesses and confirmed their co-ownership "*en común pro indiviso*" of all corporate shares and interests in these companies.

32.     Debbie has been integral to the Alonso-Rodríguez Family Businesses' operations for decades. From 1992 until her wrongful termination in January 2025, she served as Vice President of Sales and Marketing for Mr. Special, where she supervised all aspects of the company's marketing strategy and implementation. Additionally, Debbie acts as both the General Manager and Treasurer of Mayagüez Resort & Casino, Inc., holding both an executive operational role and a position on the Board of Directors.

33.     In 1992, Don Santos, acting in his official capacity as President of Mr. Special and making a deliberate business decision intended to benefit the company, directed Debbie to establish ADCOM to serve as the exclusive marketing and advertising agency for Mr. Special. This decision was made to create a binding contractual business relationship between the two entities. ADCOM was incorporated in 1993 and immediately began providing comprehensive marketing services to Mr. Special – a business relationship that continued successfully for approximately 30 years until Edwin illegally terminated it.

34.     This long-established professional relationship involved substantial coordination between Mr. Special and ADCOM, with Debbie serving as the executive bridge between the two entities. Under her supervision as Vice President of Sales and Marketing, Mr. Special would direct ADCOM regarding product selection for promotional materials, photographic content, layout specifications, promotional placement, and other marketing decisions. This relationship has been acknowledged in federal court records. See Gener-Villar v. ADCOM Group, Inc., supra.

35.     The contractual relationship between Mr. Special and ADCOM was established with Don Santos's express understanding and assurance, as President of Mr. Special, that it would

create a binding long-term business arrangement that would continue throughout Debbie's lifetime and ownership of ADCOM – a commitment that Edwin has now unlawfully breached.

36.    On June 17, 2010, Doña Iris executed her Last Will and Testament, naming Don Santos as her executor and Debbie as substitute executor. A true and correct copy is attached hereto as **Exhibit A**. The will designated her four children – Edwin Alonso Rodríguez, Richard Alonso Rodríguez, Iris Vanessa Alonso Rodríguez, and Debbie Alonso Rodríguez – as her sole and universal heirs. Significantly, the will specifically authorized her executor to administer her ownership interests in the Alonso-Rodríguez Family Businesses.

37.    Don Santos executed his Last Will and Testament on August 12, 2021, naming Edwin as his executor. A true and correct copy is attached hereto as **Exhibit B**. This will designated as his heirs: Edwin Alonso Rodríguez, Richard Alonso Rodríguez, Debbie Alonso Rodríguez, Santos Alonso Cintrón, and Andrés O. Pannocchia Alonso (the latter representing Iris Vanessa Alonso Rodríguez, who predeceased Don Santos). Notably, Don Santos's revised will contained language purporting to authorize his executor "***to administer the corporations***" themselves, rather than merely administering Don Santos's ownership interests in these businesses – an important distinction that Edwin has exploited to assert exclusive control over the entirety of the Alonso-Rodríguez Family Businesses.

38.    The deaths of Doña Iris on January 13, 2023, and Don Santos on January 31, 2023 – just 18 days apart – triggered complex estate administration issues that Edwin has exploited to further his fraudulent scheme.

39.    Following these deaths, the Puerto Rico Court of First Instance determined that the community property between Don Santos and Doña Iris must be properly liquidated before any inheritance rights can be adjudicated. See <u>Edwin Alonso Rodríguez v. Debbie Alonso Rodríguez,</u>

Case No. MZ2023CV01690 (P.R. Ct. First Instance Apr. 14, 2025) (Interlocutory Order). Despite this decision, Edwin has systematically attempted to circumvent proper liquidation procedures by exercising unilateral control over corporate assets to which he has no exclusive right.

40.    While the Court of First Instance observed in an order that "when liquidating a post-marital community property, what is appropriate is the valuation of issued shares as community property *and not intervention in the administration or assets of the corporation*," this principle necessarily presupposes a properly functioning corporate governance structure operating in good faith. The court's observation cannot be construed as authorizing Edwin's disregard of corporate formalities, breach of fiduciary duties, or systematic misappropriation of assets that legally belong to both estates pending formal liquidation of the post-marital community.

**B.  CREATION OF SA INVESTMENTS LLC AND TRANSFER OF ASSETS**

41.    On August 9, 2021, just three days before Don Santos executed his new will while suffering from multiple health conditions, including hemorrhagic strokes, SAI-LLC was formed under the laws of Puerto Rico (formation documents attached hereto as **Exhibit C**), with an effective date of October 1, 2021. The Operating Agreement for SAI-LLC was executed on August 12, 2021 (a true and correct copy of which is attached hereto as **Exhibit D**) – the same day Don Santos executed his new will – but made effective as of October 1, 2021. Edwin was designated as SAI-LLC's resident agent, authorized person, and Manager/Administrator with extensive powers.

42.    The Operating Agreement identified Don Santos as the sole "Member" even though any business interests acquired during his marriage to Doña Iris constituted community property under Puerto Rico law. Doña Iris was not included as a member, nor was her signature obtained

on the Operating Agreement. This structure deliberately excluded Doña Iris from any control rights in SAI-LLC.

43.     The Operating Agreement granted Edwin, as Manager/Administrator, sweeping authority over SAI-LLC's operations, including: (a) the sale or disposition of company assets; (b) the purchase or acquisition of assets; (c) the borrowing of money; (d) the payment or extension of loans; (e) the compromise of company claims or debts; and (f) the execution of contracts and other instruments. The agreement specifically stated that "the Manager or Administrator shall have the right to control and manage the Company" and that the Member "may not take part in the control, management, direction, or operation of the Company's affairs."

44.     On October 1, 2021 – the effective date specified in the Operating Agreement – SAI-LLC received a transfer of equity investments and money market funds with a market value of $67,304,592 and $4,187,397, respectively, for a total of $71,491,989, from Mr. Special, as documented in Note C of Mr. Special's audited financial statements for fiscal years 2021 and 2022.

45.     This transfer of assets was made without authorization from Mr. Special, as it was not approved by the board of directors. The purported authorization for this transfer was based on a Certificate of Resolution that references a board meeting that never actually occurred. At the time of the transfer, Don Santos suffered from multiple health conditions and Edwin had begun exercising increasing influence over Mr. Special's financial decisions.

46.     The transfer represented a substantial percentage of Mr. Special's liquid assets and was made without appropriate consideration of the risks involved or the impact on Mr. Special's financial stability. Following the initial $71 million transfer, several additional transfers occurred between Mr. Special and SAI-LLC or other entities under Edwin's exclusive control, further

depleting Mr. Special's assets without proper corporate authorization or legitimate business purposes.

47.     According to its audited financial statements, Mr. Special had engaged in high-volume securities trading prior to the creation of SAI-LLC, with annual proceeds from securities sales averaging $415 million between fiscal years 2015 and 2021, despite maintaining an average portfolio with a market value of only about $45 million.

48.     The Operating Agreement for SAI-LLC establishes that its purpose is "to invest in marketable investments, such as stocks, bonds, notes, and fixed income instruments, which trade in liquid securities markets," meaning that SAI-LLC was created to continue this pattern of securities trading but under Edwin's exclusive control.

49.     The financial statements of Mr. Special for 2022 reflect that during the year 2021, "proceeds on sales of securities were $498,614,878." This pattern of extremely high-risk trading has continued and intensified under Edwin's control following his parents' deaths.

50.     The timing and structure of SAI-LLC's creation, followed immediately by the massive transfer of assets on the effective date of the Operating Agreement, represents the first step in Edwin's scheme to gain absolute control of the Alonso-Rodríguez family's assets.

**C.  PATTERN OF FRAUDULENT SECURITIES TRANSACTIONS**

51.     After gaining absolute control of SAI-LLC and Mr. Special following his parents' deaths, Edwin continued and expanded a pattern of extremely high-risk trading activities. An independent forensic audit of SAI-LLC for January through June 2023, conducted by CPA Eduardo González Green of Aquino, De Córdova, Alfaro & Co., LLP (a true and correct copy of which is attached hereto as **Exhibit E**), revealed:

   a)  A massive decline in investment value, with investments losing approximately 57% of their cost basis by June of 2023. The market value of investments was

approximately $41 million, compared to their cost of approximately $97 million, representing only 43% of the original cost.

b) Inexplicable discrepancies between reported investment sales (approximately $35.5 million) and the actual change in investment account balances (approximately $21.2 million), suggesting that approximately $13.5 million in proceeds from investment sales cannot be accounted for.

c) A non-existent average return on investments of only 0.06% during this period, despite the high-risk nature of the investments.

d) Unexplained withdrawals of approximately $4.5 million appearing only in January 2023, with no record of where these funds were directed.

e) Unexplained fluctuations in reported dividends and capital accounts not corresponding to actual financial activities or distributions to shareholders.\

f) A suspicious dividend declaration following the deaths of Don Santos and Doña Iris in January 2023. Upon information and belief, this dividend was initially reported as $13.5 million in January 2023 but was subsequently reduced to $10 million in the June 2023 financial statements without explanation. Neither dividend amount appears to have been accompanied by corresponding cash decreases in the company's accounts, suggesting these were accounting manipulations rather than actual distributions to shareholders.

g) Differences between profit/loss reported in income statements versus balance sheets, with inconsistent reporting of profits with unexplained discrepancies.

52.    Edwin has used SAI-LLC as a vehicle to engage in extremely speculative securities trading, resulting in substantial losses to the investment portfolio that rightfully belongs, in part, to Debbie and the other heirs of Don Santos and Doña Iris.

53.    Edwin has concealed the true nature of these securities transactions by refusing to provide complete financial information to Debbie, despite her capacity as executor of Doña Iris' estate, and by denying her access to the corporate records of Mr. Special.

54.    Upon information and belief, b nbEdwin's pattern of high-risk, speculative trading in the securities markets is consistent with problematic gambling behavior. Discovery in this case is expected to reveal evidence regarding Edwin's troubling financial history, including requests for

advances on his inheritance from Don Santos to pay gambling debts. The extreme risk profile of the investment strategy employed under Edwin's direction demonstrates reckless decision-making that has resulted in substantial losses to assets that rightfully belong to both estates.

### D. CORPORATE GOVERNANCE VIOLATIONS AND SELF-DEALING

55.     Don Santos and Doña Iris's interests in the Alonso-Rodríguez Family Businesses remain part of an unliquidated post-marital community ("*comunidad post-ganancial*"), making the estates joint owners "*en común pro indiviso*" of all community property, pursuant to Article 534 of the Puerto Rico Civil Code. This joint ownership will persist until the liquidation process is completed, at which point the property will be divided 50-50. Until such liquidation occurs, neither estate has exclusive control rights over these assets.

56.     Notwithstanding this reality, following Don Santos' death, Edwin seized control of Mr. Special and the other Alonso-Rodríguez Family Businesses, claiming that Don Santos's will granted him exclusive authority to administer these entities. This claim is unfounded because:

   a) Don Santos, for which Edwin serves as executor of his estate, and Doña Iris, for which Debbie serves as executor of her estate, jointly owned as community property all interests in these businesses. The division of these interests will only be formalized after the proper liquidation of the post-marital community;

   b) Mr. Special and the other entities are governed by their own set of corporate documents and Puerto Rico law, not by the terms of Don Santos's will.

   c) The purported administrative powers granted in Don Santos's will are null and void, as a testator cannot dictate the administration of a separate legal entity with its own governance structure.

57.     Edwin has falsely notified suppliers and service providers that he is the President of Mr. Special without having been elected by a properly constituted board of directors. According to the last corporate report prior to the deaths of Don Santos and Doña Iris, the corporate officers of Mr. Special were Santos Alonso Maldonado (President, now deceased), Edwin Alonso

Rodríguez (Vice President), Santos Alonso Cintrón (Director), Richard Alonso Rodríguez (Secretary, now deceased), and Iris M. Rodríguez Rosa (Treasurer, now deceased), leaving the officer structure with only two members as of 2023.

58.    Edwin's assumption of control violates Mr. Special's corporate governance requirements. The Certificate of Incorporation, executed on June 11, 1999 (a true and correct copy of which is attached hereto as **Exhibit F**), expressly states "[t]he administration and management of the corporation's business shall be the responsibility of its Board of Directors . . . ***in no case shall there be fewer than three directors.***" Following the deaths of Don Santos and Doña Iris in January 2023, the purported Board of Directors consisted of only Edwin and Santos Alonso Cintrón, falling below the mandatory minimum required by Mr. Special's Certificate of Incorporation.

59.    On February 13, 2024, Edwin, without specifying in what capacity he was acting, sold real estate belonging to S.A. Properties, Inc. for $1.3 million, without informing the corporate officers, convening the board of directors, or obtaining permission from the co-heirs or the Court. The board of directors of S.A. Properties, Inc. was similarly constituted to that of Mr. Special, creating the same governance deficiencies. The purchaser of this property was Jamar's Properties LLC, as evidenced by property registry records showing Jamar's Properties LLC as the current title holder of Finca 345 in Cabo Rojo's BARRIO BAJURA (a true and correct copy of which is attached hereto as **Exhibit G**).

60.    Edwin has deliberately excluded Debbie from all management decisions regarding the Alonso-Rodríguez Family Businesses, despite her legal right as executor of Doña Iris's estate to participate in the administration of Doña Iris's estate joint interest in these entities.

61.     Edwin has also taken advantage of family assets without compensating the estates. Specifically, he has used a luxury apartment in Condado, owned jointly by both estates, for his exclusive personal use without paying any rent or compensation to either estate.

**E.  WRONGFUL TERMINATION AND CONTRACT INTERFERENCE**

62.     In furtherance of his scheme to gain control over the Alonso-Rodríguez Family Businesses and divert their assets for his personal benefit, Edwin terminated Debbie's employment as Vice President of Sales and Marketing at Mr. Special, a position she had held since 1992.

63.     Edwin also unilaterally terminated the professional services contract between Mr. Special and ADCOM. For 30 years – since 1993 – ADCOM had provided exclusive marketing and advertising services to Mr. Special, with Mr. Special determining what products should be featured in advertising and ADCOM executing those marketing decisions. See Gener-Villar v. ADCOM Group, Inc., 509 F. Supp. at 121 (so noting).

64.     These terminations were exclusively motivated by Edwin's desire to exclude Debbie from any involvement in or oversight of the Alonso-Rodríguez Family Businesses, thereby facilitating his ongoing scheme of diverting and misappropriating assets.

65.     These terminations are procedurally void because they were executed by an illegitimate Board of Directors. Mr. Special's Certificate of Incorporation requires a minimum of three directors for the Board to lawfully conduct corporate business. In January of 2025, when Debbie's employment and ADCOM's service contract were terminated, the purported Board consisted of only two individuals – Edwin and Santos Alonso Cintrón – rendering these terminations void under both Puerto Rico law and Mr. Special's governance documents.

66.     Moreover, Edwin obtained Santos' signature on a "Unanimous Consent of the Board of Directors" document (a true and correct copy of which is attached hereto as **Exhibit H**)

through deception and coercion. According to a sworn statement executed by Santos on January 8, 2025 (a true and correct copy of which is attached hereto as **Exhibit I**), Edwin summoned him to Mr. Special's headquarters on January 7, 2025, falsely representing that his signature was urgently needed for the publication of promotional flyers (shoppers).

67.     When presented with the document, Santos attests that he was "completely surprised" by its actual content. Rather than being limited to authorizing promotional materials, the document authorized termination of ADCOM's 30-year contract and approved the immediate hiring of a new agency, Culture Create LLC, to replace ADCOM.

68.     Santos signed under considerable duress when Edwin insisted that failure to sign would prevent publication of the promotional materials, which Santos understood to be essential to the business. Santos believed that without these promotional materials, the company would suffer "a significant reduction in sales" and "potentially irreparable" damage to its image.

69.     In his sworn statement, Santos has expressly declared that his consent was obtained under duress and that he does not authorize the document's use for purposes beyond what was represented to him at the time of signing. This testimony further invalidates the purported termination of ADCOM's contract and Debbie's employment with Mr. Special.

70.     Following the termination, Mr. Special has continued to use marketing materials, logos, and artistic works created by ADCOM, despite the wrongful termination of their contractual relationship. These works are protected by copyright owned by ADCOM, and no license or permission has been granted for continued use after contract termination.

71.     The termination of ADCOM's professional services contract has caused substantial financial harm to Debbie and ADCOM, depriving them of their primary source of revenue. Based on ADCOM's annual billing of approximately $4 million and an expected contract duration of 15

more years (based on the promise that the relationship would continue throughout Debbie's lifetime and her ownership of ADCOM), the damages from this breach are estimated at $60 million.

### F.  CONCEALMENT AND OBSTRUCTION

72.    Since assuming control of Mr. Special and the other Alonso-Rodríguez Family Businesses following the deaths of Don Santos and Doña Iris, Edwin has engaged in a systematic pattern of concealing financial information and obstructing Debbie's legitimate attempts to exercise her fiduciary responsibilities as executor of Doña Iris's estate.

73.    Despite multiple formal written requests, Edwin has consistently refused to provide Debbie with access to the financial records, corporate minutes, board resolutions, and other essential documentation of Mr. Special and the other Alonso-Rodríguez Family Businesses. This refusal directly contravenes Debbie's legal entitlement to such information in her capacity as executor of Doña Iris's estate, which holds joint ownership interest in these entities under Puerto Rico's community property legal regime.

74.    Edwin has further obstructed proper estate administration by issuing explicit directives to the corporations' accountants, financial advisors, and property appraisers, instructing them to withhold financial information from Debbie. These professionals have informed Debbie that they cannot provide her with the requested information without Edwin's approval, which he has deliberately withheld.

75.    As a direct consequence of Edwin's obstructive conduct, Debbie has been rendered unable to properly value the estate assets or fulfill her fiduciary duties as executor. This obstruction has exposed Debbie to potential personal liability for failure to comply with estate administration

requirements, while simultaneously preventing her from protecting the estate's interests in the Alonso-Rodríguez Family Businesses.

76.     Edwin's systematic information concealment serves a dual purpose: first, to prevent the detection and documentation of his improper financial transactions and misappropriation of corporate assets; and second, to entrench his unauthorized control over the Alonso-Rodríguez Family Businesses by denying Debbie the information necessary to challenge his actions through appropriate legal channels.

77.     The deliberate nature of this concealment is evidenced by Edwin's selective disclosure practices, whereby certain financial information is shared with third parties when it serves his interests, while simultaneously being withheld from Debbie despite her legal entitlement to such information.

### G. Invalid Appointment of New Directors

78.     On or about June 13, 2025, Edwin purported to appoint Fuentes and Luis E. Dubón Arraiza to the Board of Directors of Mr. Special, designating Fuentes as Treasurer and Dubón as Vice President and Secretary.

79.     These appointments were publicly announced on June 16, 2025, through multiple news media outlets, including News is my Business, El Nuevo Día, and El Vocero. According to these reports, Edwin stated that the reorganization of the board of directors "marks a new chapter in the history of Mr. Special" and represents "a firm step toward strengthening our operations and institutionalizing our business practices."

80.     The news reports indicated that these appointments were made to fill "***two vacancies on the board of directors***" and that prior to these appointments, the board "***only had the company president,***" referring to Edwin himself.

81.     Edwin made these appointments without convening a properly constituted board meeting and without the approval of a validly constituted Board of Directors. According to the media reports acknowledging that the board previously consisted only of Edwin as president, this confirms that at the time of these purported appointments, Mr. Special's Board of Directors fell below the mandatory minimum of three directors required by its Certificate of Incorporation.

82.     The purported appointments violate Mr. Special's corporate governance requirements because: (a) they were made unilaterally by Edwin without shareholder approval, when under Puerto Rico corporate law and Mr. Special's bylaws (a true and correct copy of which is attached hereto as **Exhibit J**), directors must be elected by the shareholders themselves, not appointed by corporate officers or an invalidly constituted board; (b) no proper board meeting appears to have been convened in accordance with corporate formalities; (c) Edwin lacked unilateral authority to make such appointments; and (d) the appointments were made without recognizing Debbie's rights as executor of Doña Iris's estate, which holds a joint ownership interest in Mr. Special pending liquidation of the postmarital community created upon the death of both spouses.

83.     These appointments were made to entrench Edwin's control over Mr. Special by installing individuals who would provide a veneer of corporate legitimacy to his unauthorized actions rather than provide genuine independent oversight of corporate affairs.

84.     The timing of these appointments, occurring in June 2025 after the pattern of corporate governance violations described herein had become apparent and while Edwin's conduct was under scrutiny, demonstrates their improper purpose of consolidating Edwin's illegitimate control over Mr. Special through the appearance of a properly constituted board.

85.     On August 9, 2025, Luis Enrique Dubón Arraiza died. His death occurred after his purported appointment to the Board of Directors of Mr. Special on June 13, 2025, but before the filing of this Complaint.

### H.  CREATION OF FRAUDULENT CORPORATE VEHICLE AND ILLEGAL PROPERTY TRANSFER

86.     Edwin's fraudulent scheme extended beyond the misappropriation of liquid assets to include the illegal transfer of real estate belonging to the estates through the creation of a sham corporate entity designed to receive and launder estate property.

87.     On June 13, 2025, Edwin incorporated MTD-INC under Puerto Rico Department of State Registration No. 555966 (incorporation documents attached hereto as **Exhibit K**), naming himself as the sole incorporator, resident agent, and president of this newly created entity. This corporation was created for the purpose of receiving estate property through fraudulent transfers while excluding the rightful heirs and estate executors from any control or oversight.

88.     The underlying special partnership from which Edwin transferred the property, Mayagüez Tourist Development, S.E., had been automatically dissolved upon the death of its principal partners, Don Santos and Doña Iris, in January 2023. Under Puerto Rico Civil Code Articles 1591 and 1599, which governed the civil partnership, the partnership was extinguished by operation of law, and the only proper procedure following dissolution was liquidation and partition of its assets according to inheritance rules.

89.     Rather than following proper liquidation procedures, Edwin circumvented legal requirements by creating the new corporation and purporting to transfer valuable partnership assets to this entity under his exclusive control, thereby converting estate property for his personal benefit and denying the other heirs their rightful interests.

90.    On July 17, 2025, through Deed No. 12 executed before Notary Vicente A. Sequeda Torres (a true and correct copy of which is attached hereto as **Exhibit L**), Edwin fraudulently transferred valuable real estate from the dissolved special partnership to his newly created corporation in exchange for corporate shares. The transferred property consists of approximately 37,765 square meters in the Algarrobos neighborhood of Mayagüez, Puerto Rico, where the Mayagüez Resort & Casino operates.

91.    This property had been owned by the special partnership in which Don Santos and Doña Iris held a 95% interest as community property. The property has substantial value, conservatively estimated to exceed several million dollars based on its strategic location and the resort and casino operations situated thereon.

92.    Edwin executed this transfer without obtaining unanimous consent from all heirs required under Civil Code article 1741 for alienation of estate property. The Civil Code provides that an executor may only alienate estate property when the testator has expressly authorized such alienation, or alternatively, with unanimous consent of all heirs or judicial authorization. Don Santos's will contained no such express authorization for property alienation.

93.    Edwin also failed to obtain the mandatory tax clearance certificate ("*relevo de gravamen contributivo*") required under Section 2054.05 of the Puerto Rico Internal Revenue Code. This provision expressly prohibits notaries from authorizing documents involving division, distribution, sale, delivery, or transfer of estate property without presentation of a tax clearance certificate issued by the Treasury Department.

94.    The deed failed to include essential complementary documents required for proper registration, including Don Santos's will, his death certificate, ODIN certification regarding the

will, testamentary letters, the original special partnership agreement with its amendments, and the required tax clearance certificate.

95.     Edwin's execution of this transfer without proper legal authority, required documentation, and mandatory tax clearances violates Section 2054.05 of the 2011 Internal Revenue Code and renders the transaction null and void under Puerto Rico law. The violation constitutes a deliberate circumvention of legal protections designed to preserve the integrity of estate proceedings and protect the rights of heirs.

96.     Edwin structured this fraudulent transfer specifically to vest himself with exclusive ownership and control of valuable estate property while denying Debbie and the other rightful heirs their community property interests and inheritance rights. This transfer represents a direct theft of estate assets accomplished through the creation and use of a sham corporate entity.

## CAUSES OF ACTION

### COUNT I – VIOLATION OF 18 U.S.C. § 1962(c)
### (Against Defendant Edwin Alonso Rodríguez)

97.     Plaintiffs reallege and incorporate by reference the factual allegations contained in paragraphs 1 through 96 above as if fully set forth herein.

98.     This claim arises pursuant to 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

99.     Mr. Special and SAI-LLC engage in interstate commerce through their purchase of goods from suppliers outside Puerto Rico, participation in interstate banking transactions, regular investments in securities traded on national exchanges, and use of interstate telecommunications and wire services to conduct business operations.

100.    At all relevant times, Edwin was employed by or associated with an enterprise consisting of Mr. Special, SAI-LLC, MTD-INC, and other Alonso-Rodríguez Family Businesses, whose activities affect interstate commerce. This enterprise constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

101.    Edwin conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(5), consisting of multiple, related acts of wire fraud in violation of 18 U.S.C. § 1343 and mail fraud in violation of 18 U.S.C. § 1341.

102.    Edwin's predicate acts of racketeering include, but are not limited to:

a)    Using interstate wire and mail communications to execute the transfer of $71,491,989 from Mr. Special to SAI-LLC On October 1, 2021, without proper board authorization, in violation of 18 U.S.C. §§ 1341 and 1343. According to Mr. Special's audited financial statements, this transfer consisted of equity investments valued at $67,304,592 and money market funds valued at $4,187,397, and was made pursuant to a purported Certificate of Resolution referencing a board meeting that never actually occurred;

b)    Using interstate wire communications to engage in extremely high-risk securities trading with the assets transferred to SAI-LLC from October 2021 through the present, resulting in catastrophic losses of approximately 57% of the investment portfolio value by June 2023, in violation of 18 U.S.C. § 1343. According to the forensic audit conducted by CPA Eduardo González Green, the market value of investments was approximately $41 million compared to their cost of approximately $97 million, representing only 43% of the original cost, with an average return on investments of only 0.06%;

c)    Using interstate wire and mail communications to conceal the diversion of approximately $13.5 million in proceeds from investment sales during January through June 2023, in violation of 18 U.S.C. §§ 1341 and 1343. The forensic audit revealed inexplicable discrepancies between reported investment sales (approximately $35.5 million) and the actual change in investment account balances (approximately $21.2 million);

d)    Using interstate wire communications to fraudulently manipulate dividend declarations in SAI-LLC following the deaths of Don Santos and Doña Iris in January 2023, initially reporting a $13.5 million dividend that was subsequently reduced to $10 million in June 2023 financial statements without explanation, despite no corresponding cash decreases in company accounts, in violation of 18 U.S.C. § 1343;

e) Using interstate wire communications to make unexplained withdrawals of approximately $4.5 million from SAI-LLC accounts in January 2023, immediately following the deaths of Don Santos and Doña Iris, without proper authorization or accounting for the destination of these funds, in violation of 18 U.S.C. § 1343;

f) Using interstate wire and mail communications to execute the fraudulent sale of real estate belonging to S.A. Properties, Inc. to Jamar's Properties LLC for $1.3 million on February 13, 2024, through Deed No. 21 before Notary Luis E. Pérez Lebrón, without proper corporate authorization or consent from co-heirs, in violation of 18 U.S.C. §§ 1341 and 1343. This transfer involved the Cabo Rojo property identified as Finca 345 in the BARRIO BAJURA, comprising 5,074.4 square meters;

g) Using interstate wire and mail communications to execute the fraudulent transfer of valuable real estate from the dissolved special partnership Mayagüez Tourist Development, S.E. to the sham corporation MTD-INC on July 17, 2025, through Deed No. 12 before Notary Vicente A. Sequeda Torres, without required tax clearances, heir consent, or proper legal authority, in violation of 18 U.S.C. §§ 1341 and 1343;

h) Using threats, coercion, and misrepresentation to obtain Santos Alonso Cintrón's signature on January 7, 2025, on a "Unanimous Consent of the Board of Directors" document by falsely representing that his signature was needed for promotional materials when the document actually authorized termination of ADCOM's contract and Debbie's employment, in violation of 18 U.S.C. § 1343.

103.    These predicate acts constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) because they: (a) involved at least two predicate acts within a ten-year period; (b) are related to each other as part of Edwin's scheme to gain control of and misappropriate assets from the Alonso-Rodríguez Family Businesses; (c) demonstrate continuity, as they have occurred over a substantial period of time (from October 2021 to the present) and threaten to continue into the future; and (d) are all committed in furtherance of the same scheme to defraud.

104.    As a direct and proximate result of Edwin's violations of 18 U.S.C. § 1962(c), Plaintiffs have suffered substantial injury to their business and property, including: (a) the loss of

Debbie's employment and compensation as Vice President of Sales and Marketing for Mr. Special;

(b) the loss of ADCOM's contractual relationship with Mr. Special; (c) The diminution in value of

Debbie's inheritance interest in the Alonso-Rodríguez Family Businesses due to Edwin's

mismanagement and diversion of assets; (d) the illegal transfer of valuable real estate belonging

to the estates to Edwin's sham corporation; and (e) the inability of Debbie to properly administer

Doña Iris's estate due to Edwin's concealment of financial information.

105.    Under 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages, costs,

and attorneys' fees from Edwin.

### COUNT II – CONSPIRACY TO VIOLATE 18 U.S.C. § 1962(c)
### (Against all Defendants)

106.    Plaintiffs reallege and incorporate by reference the factual allegations contained in

paragraphs 1 through 105 above as if fully set forth herein.

107.    This claim arises under 18 U.S.C. § 1962(d), which makes it "unlawful for any

person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

108.    Edwin, Mr. Special, SAI-LLC and MTD-INC knowingly agreed to facilitate a

scheme that included the operation or management of the enterprise through a pattern of

racketeering activity in violation of 18 U.S.C. § 1962(c).

109.    As part of this conspiracy, Edwin used his control over Mr. Special, SAI-LLC and

MTD-INC to execute the predicate acts of racketeering described in Count I, and Mr. Special, SAI-

LLC and MTD-INC knowingly participated in and benefited from these acts.

110.    As a direct and proximate result of Defendants' conspiracy to violate 18 U.S.C. §

1962(c), Plaintiffs have suffered substantial injury to their business and property.

111.    Plaintiffs are entitled to recover treble damages, costs, and attorneys' fees.

## COUNT III – COPYRIGHT INFRINGEMENT
### (Against Defendant Supermercado Mr. Special, Inc.)

112.    Plaintiffs reallege and incorporate by reference the factual allegations contained in paragraphs 1 through 111 above as if fully set forth herein.

113.    This claim arises under 17 U.S.C. § 501, which provides a cause of action for copyright infringement.

114.    ADCOM is the author and owner of numerous original works of authorship that are subject to copyright protection under 17 U.S.C. § 102, including but not limited to the following federally registered copyrights:

a)    CORNED BEEF LABEL (Registration No. 1-14984591231);

b)    RED BEANS LABEL (Registration No. 1-14984647224);

c)    EVAPORATED MILK LABEL (Registration No. 1-14984962824);

d)    MARINARA SAUCE LABEL (Registration No. 1-14984647261);

e)    PINEAPPLE TRUCK ARTWORK (Registration No. 1-14984963312);

f)    TRUCK COFFEE ARTWORK (Registration No. 1-14984647288); and

g)    Additional marketing materials, logos, and artistic works created for Mr. Special's advertising and promotional campaigns.

115.    These works were created by ADCOM for the exclusive use of Mr. Special under their contractual relationship, with ADCOM retaining ownership of the copyrights in these works.

116.    Following Edwin's illegal termination of ADCOM's professional services contract with Mr. Special, Mr. Special has continued to use, display, and reproduce ADCOM's copyrighted works without authorization or license.

117.    Mr. Special's unauthorized use of ADCOM's copyrighted works constitutes copyright infringement in violation of 17 U.S.C. § 501.

118.    Mr. Special's copyright infringement has been willful, as it has continued to use ADCOM's copyrighted works with knowledge of ADCOM's ownership rights and without authorization.

119.    As a direct and proximate result of Mr. Special's copyright infringement, ADCOM has suffered substantial damages and reputational harm.

120.    Under 17 U.S.C. § 504, ADCOM is entitled to recover its actual damages and any additional profits of the infringers, or statutory damages, at ADCOM's election.

121.    Under 17 U.S.C. § 505, ADCOM is entitled to recover its costs and attorneys' fees.

**COUNT IV – COMMONWEALTH RICO CLAIMS**
**(Against Defendant Edwin Alonso Rodríguez)**

122.    Plaintiffs reallege and incorporate by reference the factual allegations contained in paragraphs 1 through 121 above as if fully set forth herein.

123.    This claim arises under the Act Against Organized Crime and Money Laundering of the Commonwealth of Puerto Rico, P.R. LAWS ANN. tit. 25, § 971 *et seq.*, which provides a civil remedy for persons injured by violations of its provisions.

124.    Edwin engaged in a pattern of "criminal activity" within the meaning of P.R. LAWS ANN. tit. 25, § 971a by committing the following predicate crimes under Puerto Rico law:

   a)   Falsifying records in violation of P.R. LAWS ANN. tit. 33, § 5285, by creating false corporate records regarding board meetings that never occurred and manipulating financial statements to conceal his fraudulent activities;

   b)   Embezzlement and theft in violation of P.R. LAWS ANN. tit. 33, §§ 5252-5253, by misappropriating corporate funds and assets belonging to Mr. Special and the estates of Don Santos and Doña Iris, including the illegal transfer of valuable real estate;

   c)   Fraud and misappropriation in violation of P.R. LAWS ANN. tit. 33, § 5272, by conducting high-risk securities transactions that resulted in substantial losses and by diverting corporate assets for his personal benefit;

125.    Through his operation and control of Mr. Special, SAI-LLC, MTD-INC, and other Alonso-Rodríguez Family Businesses as "enterprises" within the meaning of P.R. LAWS ANN. tit. 25, § 971a, and his fraudulent scheme to misappropriate assets as described above, Edwin directly and proximately caused damages to Plaintiffs in excess of $71 million.

126.    Plaintiffs are entitled to recover treble damages plus attorneys' fees and costs from Edwin for the injuries caused by his violations of the Puerto Rico RICO statute.

## COUNT V – BREACH OF FIDUCIARY DUTY
### (Against Defendant Edwin Alonso Rodríguez)

127.    Plaintiffs reallege and incorporate by reference the factual allegations contained in paragraphs 1 through 126 above as if fully set forth herein.

128.    As an officer of Mr. Special and the other Alonso-Rodríguez Family Businesses, Edwin owed fiduciary duties of care, loyalty, and good faith to these entities and their shareholders, including Doña Iris's estate.

129.    As executor of Don Santos's estate, Edwin owed fiduciary duties to the beneficiaries of that estate, including Debbie.

130.    Edwin has breached these fiduciary duties through various actions, including:

a)    Transferring $71,491,989 from Mr. Special to SAI-LLC without proper corporate authorization;

b)    Engaging in highly speculative securities trading with the assets of SAI-LLC, resulting in substantial losses;

c)    Selling real estate belonging to S.A. Properties, Inc. without proper corporate authorization;

d)    Creating a sham corporation and illegally transferring valuable real estate belonging to the estates to this entity without proper legal authority, required tax clearances, or consent from rightful heirs;

e)    Using an apartment in San Juan, owned jointly by both estates, for his exclusive personal use without paying rent;

f)   Concealing financial information from Debbie and other heirs;

g)   Wrongfully terminating Debbie's employment and ADCOM's service contract with Mr. Special; and

h)   Operating the Alonso-Rodríguez Family Businesses for his personal benefit rather than for the benefit of all shareholders and heirs.

131.   Edwin's breaches of fiduciary duty were committed with malice, oppression, or fraud, as evidenced by his systematic efforts to exclude Debbie from the management of the Alonso-Rodríguez Family Businesses and to conceal financial information from her.

132.   As a direct and proximate result of Edwin's breaches of fiduciary duty, Plaintiffs have suffered substantial damages, including: (a) the loss of Debbie's employment and compensation as Vice President of Sales and Marketing for Mr. Special; (b) the loss of ADCOM's contractual relationship with Mr. Special; (c) the diminution in value of Debbie's inheritance interest in the Alonso-Rodríguez Family Businesses due to Edwin's mismanagement and diversion of assets; (d) the illegal transfer of valuable estate property to Edwin's sham corporation; and (e) the inability of Debbie to properly administer Doña Iris's estate due to Edwin's concealment of financial information.

### COUNT VI – BREACH OF CONTRACT
### (Against Defendant Supermercado Mr. Special, Inc.)

133.   Plaintiffs reallege and incorporate by reference the factual allegations contained in paragraphs 1 through 132 above as if fully set forth herein.

134.   ADCOM and Mr. Special entered into a valid and enforceable contract in 1993, pursuant to which ADCOM agreed to provide marketing and advertising services to Mr. Special, and Mr. Special agreed to compensate ADCOM for these services.

135.    This contractual relationship was established at Don Santos's request, as President of Mr. Special, with the express promise that it would continue throughout Debbie's lifetime and ownership of ADCOM.

136.    ADCOM fully performed its obligations under the contract, providing high-quality marketing and advertising services to Mr. Special for approximately 30 years.

137.    Mr. Special breached the contract by terminating it without cause or proper notice, through the actions of Edwin acting under color of authority as purported President of Mr. Special.

138.    As a direct and proximate result of Mr. Special's breach of contract, ADCOM has suffered substantial damages, including lost profits and business opportunities. Based on ADCOM's annual billing of approximately $4 million and an expected contract duration of 15 more years (based on the promise that the relationship would continue throughout Debbie's lifetime), the damages from this breach are estimated at $60 million.

### COUNT VII – TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Defendants Edwin Alonso Rodríguez and
### Supermercado Mr. Special, Inc.)

139.    Plaintiffs reallege and incorporate by reference the factual allegations contained in paragraphs 1 through 138 above as if fully set forth herein.

140.    Plaintiffs bring this tortious interference claim against Edwin personally, his actions in terminating ADCOM's contract were taken in his individual capacity and outside the scope of any legitimate corporate authority.

141.    A valid and enforceable contract existed between ADCOM and Mr. Special, pursuant to which ADCOM provided marketing and advertising services to Mr. Special, and Mr. Special compensated ADCOM for these services.

142.    Edwin was aware of this contractual relationship, having been an officer of Mr. Special during the entire duration of the contract.

143.    Edwin intentionally and improperly interfered with this contractual relationship by unilaterally terminating ADCOM's services contract with Mr. Special, without proper corporate authorization or justification.

144.    Edwin's interference was motivated by his desire to exclude Debbie from any involvement in or oversight of the Alonso-Rodríguez Family Businesses, thereby facilitating his ongoing scheme of diverting and misappropriating assets.

145.    As a direct and proximate result of Edwin's tortious interference with contract, ADCOM has suffered substantial damages, including lost profits and business opportunities. Based on ADCOM's annual billing of approximately $4 million and an expected contract duration of 15 more years (based on the promise that the relationship would continue throughout Debbie's lifetime), the damages from this interference are estimated at $60 million.

### COUNT VIII – DECLARATORY JUDGMENT REGARDING
### VALIDITY OF ADMINISTRATIVE POWERS
### (Against Defendant Edwin Alonso Rodríguez)

146.    Plaintiffs reallege and incorporate by reference the factual allegations contained in paragraphs 1 through 145 above as if fully set forth herein.

147.    This claim arises under 28 U.S.C. § 2201, which authorizes this Court to declare the rights and legal relations of any interested party seeking such declaration.

148.    An actual controversy exists between Debbie and Edwin regarding the validity and effect of the administrative powers granted to Edwin in Don Santos's will. Edwin claims that the will grants him authority to unilaterally administer Mr. Special and the other Alonso-Rodríguez Family Businesses, while Debbie contends that these provisions are null and void.

149.    Don Santos's will contains the following provision regarding Edwin's purported

administrative powers:

> "(H) ***Administer the corporations*** Supermercados Mr. Special Inc., S.A.
> Properties Inc. and Mariola Inc., the Special Partnership Mayagüez Tourist
> Development S.E. and the limited liability company S.A. Investment LLC,
> to the extent that THE TESTATOR has a majority interest in these, and if it
> were minority, supervise and administer such interest."

150.    This provision is null and void for the following reasons:

    a)  A testator cannot dictate the administration of separate legal entities with their
own governance structures;

    b)  Corporate governance of Mr. Special and the other Alonso-Rodríguez Family
Businesses is governed by their own organizational documents and Puerto Rico
corporate law, not by the terms of Don Santos's will;

    c)  The assets of these businesses remain part of an unliquidated post-marital
community ("*comunidad post-ganancial*"), creating joint ownership between
the estates rather than divided interests, meaning that Don Santos did not have
a "majority interest" as contemplated in the will and Edwin cannot unilaterally
exercise control over these assets;

    d)  Proper corporate governance requires decision-making by properly constituted
boards of directors, not unilateral action by a single heir or executor.

151.    Edwin has relied on this provision to seize control of Mr. Special and the other

Alonso-Rodríguez Family Businesses, denying Debbie her rightful role in their management.

152.    Debbie is entitled to a declaration that the administrative powers granted to Edwin

in Don Santos's will are null and void with respect to the administration of Mr. Special and the

other Alonso-Rodríguez Family Businesses, and that Edwin lacks the authority to unilaterally

manage and control these entities.

### COUNT IX – DECLARATORY JUDGMENT REGARDING
### DISSOLUTION OF SA INVESTMENTS LLC
### (Against Defendants Edwin Alonso Rodríguez and SA Investments LLC)

153.    Plaintiffs reallege and incorporate by reference the factual allegations contained in paragraphs 1 through 152 above as if fully set forth herein.

154.    This claim arises under 28 U.S.C. § 2201, which authorizes this Court to declare the rights and legal relations of any interested party seeking such declaration.

155.    Debbie brings this claim in her capacity as executor of Doña Iris's estate, which holds a joint interest in SAI-LLC through the unliquidated post-marital community.

156.    An actual controversy exists between Debbie and Defendants regarding the legal status of SAI-LLC following the death of Don Santos, who was its sole member as established in the Operating Agreement executed on August 12, 2021.

157.    The Operating Agreement for SAI-LLC expressly identifies Don Santos as the sole "Member" of the company. Section 1.7 of the Operating Agreement states: "Additional Members may only be admitted with the written consent of the Member." While Edwin was designated as the Manager/Administrator, he was not designated as a member of SAI-LLC.

158.    Following Don Santos's death on January 31, 2023, SAI-LLC was left without any members. Under Article 19.47 of the Puerto Rico General Corporations Law, a limited liability company without members is dissolved and must conclude its business unless:

> a) Within 90 days after the occurrence of the event that terminated the membership of the last remaining member, the personal representative of the last remaining member agrees in writing to continue the LLC and to the admission of the personal representative or its nominee as a member; or

> b) A member is admitted in the manner provided in the Operating Agreement within 90 days after the occurrence of the event that terminated the membership of the last remaining member.

159.    Upon information and belief, neither of the statutory exceptions to automatic dissolution was satisfied: (a) Edwin, as personal representative of Don Santos's estate, did not execute a written agreement to continue SAI-LLC within 90 days of Don Santos's death as required by Article 19.47(i); and (b) no new member was admitted to SAI-LLC within 90 days of Don Santos's death in accordance with the provisions of the Operating Agreement as required by Article 19.47(ii).

160.    Despite the operation of law that resulted in the dissolution of SAI-LLC, Edwin has continued to operate SAI-LLC as if it were a validly existing entity, exercising control over its substantial assets, engaging in securities transactions, and otherwise acting as if the entity remained in good standing.

161.    Debbie is entitled to a declaration that: (a) SAI-LLC was dissolved by operation of law following Don Santos's death; (b) SAI-LLC should be wound up and its assets distributed according to law; and (c) Edwin lacks authority to continue operating SAI-LLC or engaging in transactions on its behalf.

## COUNT X – DECLARATORY JUDGMENT REGARDING COMMUNITY PROPERTY CHARACTER OF BUSINESS INTERESTS
### (Against all Defendants)

162.    Debbie realleges and incorporates by reference the factual allegations contained in paragraphs 1 through 161 above as if fully set forth herein.

163.    This claim arises under 28 U.S.C. § 2201, which authorizes this Court to declare the rights and legal relations of any interested party seeking such declaration.

164.    An actual controversy exists between Debbie and Edwin regarding the character and ownership of the interests in Mr. Special, SAI-LLC, and the other Alonso-Rodríguez Family Businesses.

165.   Don Santos and Doña Iris were married for 67 years under Puerto Rico's community property regime ("*sociedad legal de gananciales*"). Under this legal regime, all assets acquired during the marriage, including business interests, constitute community property owned equally by both spouses regardless of whose name appears on formal documentation.

166.   The shares of Mr. Special and membership interests in SAI-LLC, along with interests in the other Alonso-Rodríguez Family Businesses, were acquired during the marriage of Don Santos and Doña Iris and therefore constitute community property.

167.   Following the deaths of Don Santos and Doña Iris, these community property interests became part of an unliquidated community property ("*comunidad post-ganancial*") that must be properly liquidated before any inheritance rights can be adjudicated.

168.   Edwin has disregarded the community property character of these business interests and has treated them as if they belonged exclusively to Don Santos's estate.

169.   Debbie is entitled to a declaration that the shares of Mr. Special, the membership interests in SAI-LLC, and interests in the other Alonso-Rodríguez Family Businesses constitute community property jointly owned by the estates of Don Santos and Doña Iris pending liquidation of the post-marital community.

### COUNT XI – DECLARATORY JUDGMENT REGARDING VALIDITY OF DIRECTOR AND CORPORATE OFFICERS APPOINTMENTS
**(Against Defendants Edwin Alonso Rodríguez, Jorge L. Fuentes Benejam, and Supermercado Mr. Special, Inc.)**

170.   Plaintiffs reallege and incorporate by reference the factual allegations contained in paragraphs 1 through 169 above as if fully set forth herein.

171.   This claim arises under 28 U.S.C. § 2201, which authorizes this Court to declare the rights and legal relations of any interested party seeking such declaration, and under the Court's supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

172.    An actual controversy exists between Debbie and Defendants regarding the validity and legal effect of the purported appointments of Fuentes to the Board of Directors of Mr. Special on June 13, 2025.

173.    These appointments are void under Puerto Rico corporate law and Mr. Special's governing documents because they were made in violation of corporate governance requirements. Specifically, the appointments violate Mr. Special's Certificate of Incorporation, which provides that "the administration and management of the corporation's business shall be the responsibility of its Board of Directors" and that "in no case shall there be fewer than three directors."

174.    At the time of the purported appointments, Mr. Special's Board of Directors consisted of only Edwin and Santos, falling below the mandatory minimum required by the Certificate of Incorporation. Under Puerto Rico corporate law, a board of directors that lacks the minimum number of members required by the corporate charter cannot validly conduct corporate business or make binding appointments.

175.    The appointments were made without observance of proper corporate formalities, including the convening of a valid board meeting with appropriate notice, the presence of a quorum, and compliance with voting requirements. Edwin acted unilaterally and without authority to make these appointments.

176.    The appointments were further invalid because they were made without recognition of the community property character of the ownership interests in Mr. Special and without acknowledgment of Debbie's rights as executor of Doña Iris's estate, which holds a joint ownership interest in the corporation.

177.    Edwin's appointment of Fuentes (and Dubón) as directors and officers constitutes an *ultra vires* corporate action that exceeds the scope of his legitimate authority and violates his

fiduciary duties to Mr. Special and its shareholders. The appointments were made for the improper purpose of entrenching Edwin's unauthorized control over the corporation rather than for legitimate business purposes.

178.    The invalid appointments have created uncertainty regarding the composition and authority of Mr. Special's Board of Directors, potentially exposing the corporation to liability and impairing its ability to conduct business in accordance with law and its governing documents.

179.    The appointments lack any independent business justification and were timed to occur during a period when Edwin's corporate governance violations were under scrutiny, demonstrating their primary purpose as an attempt to legitimize Edwin's wrongful control over Mr. Special through the installation of directors who would not provide independent oversight.

180.    As a direct and proximate result of these invalid appointments, Debbie has suffered injury to her property rights and interests in Mr. Special, including the dilution of her rightful voice in corporate governance and the continuation of Edwin's pattern of unauthorized control over corporate affairs.

181.    Debbie is entitled to a judicial declaration that the appointments of Fuentes and Dubón are null and void, that any corporate actions taken by a board including these invalidly appointed directors are without legal effect, and that Mr. Special must establish a properly constituted Board of Directors in accordance with Puerto Rico law and its governing documents.

### COUNT XII – CIVIL CONSPIRACY AND AIDING AND ABETTING
### RICO VIOLATIONS
### (Against Defendant Mayagüez Tourist Development, Inc.)

182.    Plaintiffs reallege and incorporate by reference the factual allegations contained in paragraphs 1 through 181 above as if fully set forth herein.

183.    This claim arises under 18 U.S.C. § 1962(c) and (d), which prohibit conducting the affairs of an enterprise through a pattern of racketeering activity and conspiring to violate these provisions.

184.    MTD-INC was created by Edwin on June 13, 2025, as an instrumentality and component of his racketeering enterprise, designed specifically to receive, conceal, and launder the proceeds of his fraudulent scheme to misappropriate estate assets.

185.    From its incorporation through the present, MTD-INC has knowingly participated in and facilitated Edwin's pattern of racketeering activity by serving as the recipient entity for illegally transferred estate property worth millions of dollars.

186.    MTD-INC has provided Edwin with a corporate vehicle to launder and conceal misappropriated estate assets, enabling him to exercise unauthorized control over valuable estate property through a corporate structure designed to exclude rightful heirs and estate executors from any oversight or control.

187.    The corporation received valuable estate property on July 17, 2025, with actual or constructive knowledge that such property was being transferred in violation of Puerto Rico estate law, tax law, and Edwin's fiduciary duties as executor of Don Santos's estate.

188.    MTD-INC's acceptance and retention of the illegally transferred property constitutes knowing participation in Edwin's conspiracy to violate 18 U.S.C. § 1962(c) and (d), as the corporation was created for the specific purpose of facilitating and concealing Edwin's fraudulent appropriation of estate assets.

189.    The corporation has continued to hold and exercise dominion over the illegally transferred property despite having knowledge, through Edwin as its sole officer and director, of

the improper nature of the transfer and Edwin's lack of legal authority to alienate estate property without proper authorization.

190.    As a direct and proximate result of MTD-INC's participation in Edwin's racketeering enterprise, Plaintiffs have suffered substantial injury to their business and property interests, including the loss of valuable real estate rightfully belonging to the estates and the inability to properly administer and liquidate estate assets.

191.    Under 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages, costs, and attorneys' fees from MTD-INC.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

### A.  ON COUNT I (VIOLATION OF 18 U.S.C. § 1962(C)):

1.  Awarding Plaintiffs treble damages in an amount to be determined at trial, but not less than $215 million;

2.  Awarding Plaintiffs their costs of suit, including reasonable attorneys' fees, under 18 U.S.C. § 1964(c);

### B.  ON COUNT II (CONSPIRACY TO VIOLATE 18 U.S.C. § 1962(C)):

1.  Awarding Plaintiffs treble damages in an amount to be determined at trial, but not less than $215 million;

2.  Awarding Plaintiffs their costs of suit, including reasonable attorneys' fees, under 18 U.S.C. § 1964(c);

### C.  ON COUNT III (COPYRIGHT INFRINGEMENT):

1.  Awarding ADCOM its actual damages and Defendants' profits, or statutory damages, at ADCOM's election, pursuant to 17 U.S.C. § 504;

2.  Awarding ADCOM its costs of suit, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

    3.    Enjoining Defendants from further use of ADCOM's copyrighted works;

**D.  ON COUNT IV (COMMONWEALTH RICO CLAIMS):**

    1.    Awarding Plaintiffs treble damages pursuant to P.R. LAWS ANN. tit. 25, § 971h in an amount to be determined at trial, but not less than $215 million;

    2.    Ordering the forfeiture of all property and interests acquired by Edwin through his pattern of criminal activity, including but not limited to the property illegally transferred to MTD-INC, pursuant to P.R. LAWS ANN. tit. 25, § 971l;

    3.    Awarding Plaintiffs their costs of suit, including reasonable attorneys' fees, pursuant to P.R. LAWS ANN. tit. 25, § 971h;

**E.  ON COUNT V (BREACH OF FIDUCIARY DUTY):**

    1.    Awarding Plaintiffs compensatory damages in an amount to be determined at trial;

    2.    Awarding Plaintiffs punitive damages in an amount to be determined at trial;

    3.    Imposing a constructive trust over all assets misappropriated by Edwin, including the property transferred to MTD-INC;

**F.  ON COUNT VI (BREACH OF CONTRACT):**

    1.    Awarding ADCOM compensatory damages in the amount of $60 million;

**G.  ON COUNT VII (TORTIOUS INTERFERENCE WITH CONTRACT):**

    1.    Awarding ADCOM compensatory damages in the amount of $60 million;

    2.    Awarding ADCOM punitive damages in an amount to be determined at trial;

**H.  ON COUNT VIII (DECLARATORY JUDGMENT – ADMINISTRATIVE POWERS):**

    1.    Declaring that the administrative powers granted to Edwin in Don Santos's will are null and void with respect to the administration of Mr. Special and the other Alonso-Rodríguez Family Businesses;

    2.    Declaring that Edwin lacks the authority to unilaterally manage and control Mr. Special and the other Alonso-Rodríguez Family Businesses;

**I.  ON COUNT IX (DECLARATORY JUDGMENT – DISSOLUTION SA INVESTMENTS LLC):**

    1.    Declaring that SAI-LLC was dissolved by operation of law following Don Santos's death;

2.  Ordering the winding up of SAI-LLC's affairs and the proper distribution of its assets according to law;

3.  Declaring that Edwin lacks authority to continue operating SAI-LLC or to engage in transactions on its behalf;

4.  Ordering Edwin to provide a full accounting of all transactions conducted on behalf of SAI-LLC following Don Santos's death;

**J. ON COUNT X (DECLARATORY JUDGMENT – COMMUNITY PROPERTY):**

1.  Declaring that the shares of Mr. Special, the membership interests in SAI-LLC, and interests in the other Alonso-Rodríguez Family Businesses constitute community property jointly owned by the estates of Don Santos and Doña Iris pending formal liquidation of the post-marital community;

2.  Declaring that Edwin lacks authority to exercise exclusive control over these business interests;

**K. ON COUNT XI (DECLARATORY JUDGEMENT – DIRECTOR AND OFFICER APPOINTMENTS):**

1.  Declaring that the appointment of Jorge L. Fuentes Benejam to the Board of Directors of Mr. Special on June 13, 2025 and as officer are null and void;

2.  Declaring that any corporate actions taken by a board including these invalidly appointed directors are without legal effect;

3.  Enjoining Fuentes from acting as director and officerof Mr. Special;

4.  Ordering that Mr. Special establish a properly constituted Board of Directors in accordance with Puerto Rico law and its governing documents;

**L. ON COUNT XII (CIVIL CONSPIRACY AND AIDING AND ABETTING):**

1.  Declaring the July 17, 2025, property transfer from Mayagüez Tourist Development, S.E. to Mayagüez Tourist Development, Inc. null and void;

2.  Ordering the return of all illegally transferred real estate to the appropriate estates for proper liquidation and distribution according to law;

3.  Awarding Plaintiffs treble damages under 18 U.S.C. § 1964(c) in an amount to be determined at trial;

4.  Imposing a constructive trust over all assets received by Mayagüez Tourist Development, Inc. from Edwin or any estate entity;

5.  Awarding Plaintiffs their costs of suit, including reasonable attorneys' fees, under 18 U.S.C. § 1964(c);

**M. ON ALL COUNTS:**

1.  Awarding Plaintiffs pre-judgment and post-judgment interest on all damages as allowed by law;

2.  Awarding Plaintiffs their costs of suit, including reasonable attorneys' fees, as allowed by law;

3.  Ordering the immediate preservation of all books, records, and documents related to the Alonso-Rodríguez Family Businesses and their assets;

4.  Enjoining Edwin and all other Defendants from further dissipation, transfer, or encumbrance of estate assets pending resolution of this litigation;

5.  Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs Debbie Alonso Rodríguez and ADCOM Group, Inc. hereby demand a trial by jury on all issues so triable in the above-captioned civil action. This demand encompasses all matters set forth in the Complaint and any subsequent amended pleadings filed in this matter.

[*Signature Page Follows*]

CERTIFICATE OF SERVICE: We hereby certify that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record in this case.

Dated: September 5, 2025.                    Respectfully submitted,

**SEPULVADO, MALDONADO & COURET**
304 Ponce de León Avenue, Suite 990
San Juan, Puerto Rico 00918
Tel.: (787) 765-5656
Fax: (787) 294-0073

*s/ Lee R. Sepulvado Ramos*
**Lee R. Sepulvado Ramos**
USDC Bar No. 211912
lsepulvado@smclawpr.com

*s/ Juan A. Frau Escudero*
**Juan A. Frau Escudero**
USDC Bar No. 222005
jfrau@smclawpr.com

*s/ Gerardo J. Cruz Ortiz*
**Gerardo J. Cruz Ortiz**
USDC Bar No. 307011
gcruz@smclawpr.com